# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**KELSEY NOBACH**                                                        **PLAINTIFF**

**VS.**                                         **CIVIL ACTION NO. 1:11CV346-HSO-RHW**

**WOODLAND VILLAGE NURSING**
**HOME CENTER, INC.**                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER COMES BEFORE THE COURT upon the Motion [35] of Defendant Woodland Village Nursing Home Center for Summary Judgment, filed April 16, 2012, pursuant to FED. R. CIV. P. 56. Plaintiff has filed a Response [41], and Defendant a Reply [43]. After consideration of the Motion, the record in this case, and the relevant legal authorities, and for the reasons stated below, the Court finds that the Motion should be denied.

## I. FACTS AND PROCEDURAL HISTORY

A.   Factual Background

Sometime in August 2008, Plaintiff began working as an activity aide for residents of the Woodland Village Nursing Home Center ["Woodland Village"] in the building referred to as the "Main Hall." Compl. [1] ¶ 6; Dep. of Kelsey Nobach, att. as Ex. "2" to Pl.'s Resp. to Def.'s Mot. for Summ. J. [41-2], at pp. 8-9. Plaintiff's job duties encompassed carrying out daily routines, including performing a devotional

reading[1], reading newspapers to the residents, playing games with them, and generally keeping the residents entertained. Dep. of Kelsey Nobach, att. as Ex. "2" to Pl.'s Resp. to Def.'s Mot. for Summ. J. [41-2], at pp. 3-4. Sometime between December 2008 and January 2009, Plaintiff began working in the "500 Hall," a smaller building where approximately 18-20 Alzheimer's patients resided. Plaintiff's employment duties as an activity aide essentially remained the same. *Id*. at pp. 8-9.

On or about September 19, 2009, Plaintiff's day off, she was called into work to fill in at the Main Hall. Compl. [1], ¶¶ 7-9; Pl.'s Aff. [41-1], ¶ 7, at p. 2, att. as Ex. "1" to Compl. She alleges that, during her shift, Ms. Alexis Gardner, a co-worker, approached her and asked her to pray the rosary with a Catholic resident. *Id*. at ¶ 11. Plaintiff advised Ms. Gardner that: "I was not Catholic and it was not my religion, but if she wanted to conduct the rosary, then she was welcome to." Dep. of Kelsey Nobach, [41-2], att. as Ex. "2" to Pl.'s Resp. to Mot. for Summ. J. at p. 42; Compl. at ¶ 12. Plaintiff worked the remainder of the day in the Main Hall without further incident, and returned to work at the 500 Hall on Monday, September 21, 2009.

On Thursday, September 24, 2009, Plaintiff was called into the office of her supervisor, Ms. Lynn Mulherin. According to the Complaint, at this time Plaintiff

---

[1]Plaintiff testified that this reading "was a non-denominational inspirational reading with scriptures, and, like, written in stories from readers." Dep. of Kelsey Nobach, att. as Ex. "2" to Pl.'s Resp. to Def.'s Mot. for Summ. J. [41-2], at p. 12.

was given a formal write-up for insubordination, specifically for not performing the rosary. *Id.* at ¶¶ 13-15. Plaintiff was also terminated at this meeting, and was told that "it doesn't matter if its [sic] against your religion, if you refuse it's insubordination." Compl. [1-1] ¶ 15, at p. 4; Pl.'s Aff. [41-1], ¶ 17, at p. 2, att. as Ex. "1" to Compl.

B.   Procedural History

Plaintiff filed a charge with the Equal Employment Opportunity Commission ["EEOC"], and received her Notice of Right to Sue on June 30, 2011. EEOC Notice of Right to Sue [1-1], att. as Ex. "1" to Compl. Plaintiff filed her Complaint in this Court on September 16, 2011, asserting that she was discriminated against on the basis of her religion. She brings claims pursuant to Title VII, 42 U.S.C. § 2000e, *et seq*. Plaintiff's Complaint also advances a claim against Woodland Village under state law for gross negligence and/or negligent supervision of its employees.[2] Compl. [1], ¶¶ 28-33, at pp. 5-6.

## II. DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

---

[2]In her Response to the Motion for Summary Judgment, Plaintiff "withdraws her claim in Count II of her Complaint, as she has consistently presented her claim solely for a wrongful termination pursuant to Title VII." Pl.'s Resp. to Mot. for Summ. J., [41] n.1, at p. 1.

CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the

record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

B.   Plaintiff's Title VII Religious Discrimination Claim[3]

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

1.   Plaintiff's *Prima Facie* Case

In order to establish a *prima facie* case of religious discrimination under Title VII, Plaintiff must establish that she "had a bona fide religious belief that conflicted with an employment requirement, the employer was informed of that belief, and she was discharged or disciplined for failing to comply with the conflicting employment requirement." *Ellis v. Principi,* 246 F. App'x 867, 872 (5th Cir. 2007) (citing *Weber v. Roadway Exp. Inc.,* 199 F.3d 270, 273 (5th Cir. 2000)); *see also Watts v. School Bd. of St. Landry Parish,* 213 F. App'x 285 (5th Cir. 2007); *McGlothin v. Jackson*

---

[3]Neither the Complaint nor Plaintiff's Response to Defendant's Motion for Summary Judgment implicate a disparate impact or disparate treatment claim. However, the Title VII framework for discrimination set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), is applicable to religious discrimination cases. *Rubinstein v. Administrators of the Tulane Educational Fund,* 218 F.3d 392, 399 (5th Cir. 2000) (*prima facie* elements for racial discrimination set forth in *McDonnell Douglas* applied to religious discrimination claim); *see also Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir.1999).

*Mun. Separate Sch. Dist.*, 829 F. Supp. 853, 855 (S.D. Miss. 1992).

>	a.	*Whether Plaintiff had a Bona Fide Religious Belief that Conflicted with an Employment Requirement*

Plaintiff argues that praying of the rosary is "wrong and improper, and to do so would be against her own, personal, sincerely held religious beliefs." Pl.'s Resp. to Mot. for Summ. J. [41] at p. 7. The area of personal and sincerely held religious beliefs is exceedingly broad and "courts . . . are not free to reject beliefs because they consider them 'incomprehensible.' Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious." *United States v. Seeger*, 380 U.S. 163, 184-85 (1965).

Plaintiff testified in her deposition that, while she was raised as a Jehovah's Witness, she no longer actively practiced that religion, or any other religion.

>	Q:	Explain that to me. You're not active. What does that mean?
>	A:	I don't regularly attend - - the services of Jehovah's Witnesses.
>	Q:	Are you a member of any church?
>	A:	No.
>	Q:	Not just Jehovah's Witness, any church at all?
>	A:	No.

Dep. of Kelsey Nobach, [41-2], att. as Ex. "2" to Pl.'s Resp. to Mot. for Summ. J. At pp. 18-19.

Based on the record before the Court, a fact question exists as to whether praying the rosary conflicted with Plaintiff's religious beliefs. For purposes of this Motion, Plaintiff has established this element.

> b. *Whether Woodland Village was Informed or Had Knowledge of Plaintiff's Belief*

It is undisputed that Plaintiff did not mention the purported conflict between her religious beliefs and praying the rosary to her employer, Woodland Village, until after she was terminated. Plaintiff did inform her co-worker, Alexis Gardner, on September 19, 2009, that she would not do the rosary. However, nothing in the record indicates that Plaintiff relayed her religious objection or information surrounding this incident to a supervisor, or any other member of management.[4]

Plaintiff reported to work Monday following the incident. She was not called into her supervisor's office about the incident until Thursday. Nowhere in the record does Plaintiff assert that she requested Woodland Village to accommodate any religious belief(s). Pl.'s Aff., attached as Ex. "1" to Pl.'s Resp. However, construing the evidence in the light most favorable to her, as this Court must, Plaintiff's testimony that she was told that, regardless of the number of previous write-ups she had, she would have been terminated for insubordination for failing to do the rosary, is sufficient to create a material fact question as to this element of Plaintiff's *prima facie* case.

> c. *Whether Plaintiff was Discharged for Failing to Comply with the Conflicting Employment Requirement*

According to Plaintiff's deposition, "even if not for the prior write ups, I would

---

[4]The Court notes that while Ms. Lorie Norris was the CNA present on duty in the Main Hall that day as Plaintiff's supervisor, there is no evidence that Plaintiff relayed her religious objection to Ms. Norris.

have been fired for this instance alone. . . . that if I didn't pray the rosary it was insubordination and being told that I would have been fired for not praying the rosary whether it was my first or fifth write up." *Id.*, at pp. 25, 27-28. The record indicates that prior to her being terminated on September 24, 2009, Plaintiff received four previous disciplinary write ups, for a total of five during her approximately thirteen [13] months of employment at Woodland Village. The Court notes that only the September 19, 2009, reprimand is included the present record. It reflects that: "this is Ms. Noback's [sic] 5th write up," and the disciplinary action recommendation states: "write up/termination." Employee Reprimand, [41-1], att. to Pl.'s Resp. to Mot. for Summ. J., at p. 5.

According to the Affidavit of Mr. James Williams, Director of Operations for Woodland Village, Plaintiff was terminated for excessive write ups. Aff. of James Williams, [36-2], att. as Ex. "2" to Def.'s Mem. in Support of Mot. for Summ. J. at p. 2. However, Plaintiff's Employee Termination Report states in part that:

> Employee has been written up 5x's. The last write-up on 9-24-09 for not doing rosary with resident is what brought forth termination. She has refused to sign write up.

Employee Termination Report, [41-1], att. to Pl.'s Resp. to Mot. for Summ. J., at p. 5.

Because the Court construes the evidence in the light most favorable to Plaintiff, the language contained in the Employee Termination Report could be interpreted in two different ways. The report could be interpreted to mean that Plaintiff was written up five times and, as a result, was being terminated. The

report could also be interpreted to mean that Plaintiff was written up for not performing the rosary, and, as a result, was being terminated. This fact question is one the Court cannot resolve.

Even though Plaintiff has failed to specify her religious affiliation or beliefs, she attests that her personal beliefs differ from what Woodland Village required in performing a rosary, and it was for this reason that she was fired. The Court finds that the record evidence is sufficient to create material fact questions with regard to these issues.

2. <u>Whether Woodland Village could Accommodate Plaintiff Without Undue Hardship?</u>

Once a plaintiff satisfies a *prima facie* case, the burden shifts to the employer to show that it was unable to reasonably accommodate the plaintiff's needs without undue hardship. *Brener v. Diagnostic Center Hosp.*, 671 F.2d 141, 144 (5th Cir. 1982). "Under Title VII . . . a covered employer has the 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" *Eversley v. MBank Dallas*, 843 F.2d 172, 175 (5th Cir. 1988) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75 (1977)). "Undue hardship" exists when an employer is required to bear more than a *de minimis* cost. *Trans World,* 432 U.S. at 84; *Brener*, 671 F.2d at 146.

In *Finnie v. Lee County, Mississippi*, the Court, in balancing whether an accommodation would result in an undue hardship on the employer, reasoned that:

> an employer need not actually incur costs before claiming that an accommodation would result in costs that are more than de minimis. . .

> . *see also Weber v. Roadway Express, Inc.,* 199 F.3d 270, 274 (5th Cir. 2000) ("The mere possibility of an adverse impact on co-workers ... is sufficient to constitute an undue hardship."); *Eversley v. MBank Dallas,* 843 F.2d 172, 176 (5th Cir. 1988) (determining it would be an undue hardship on an employer to require employees to switch shifts). . . . In other words, an employer cannot give preference to an employee because of his or her religion any more than it can discriminate against that employee for the same reason. It is axiomatic that preferential treatment involves discriminating against one in favor of another which, in the context of religion, is exactly the conduct proscribed by Title VII.

*Finnie v. Lee County, Miss.,* 2012 WL 124587 (N.D. Miss. Jan. 17, 2012) (internal citations omitted).

Because Plaintiff has, at least at this stage of the proceedings, carried the bare minimum of her *prima facie* burden on a religious discrimination claim, the burden shifts to Woodland Village to show that no reasonable accommodation of Plaintiff's religious beliefs could be made without enduring undue hardship. Woodland Village offers the Affidavit of Mr. Williams, which states in part that:

> [i]t would cause an undue hardship for Woodland Village to offer an accommodation to Ms. Nobach based upon her objection to the rosary. There is no other reasonably comparable position to which she could have been transferred where conflicts would be less likely to arise. There is only one activity aide per hall on duty at a time. We would have to shift activity aides from different halls to complete one activity or call in an additional person for the sole purpose of performing the rosary. This would lead to an additional expense to Woodland Village and a scheduling issue with its employees.
>
> We could not ensure that Catholic residents would not be placed on any hall that Ms. Nobach was scheduled or called in to work. . . . It would also be an undue hardship for Woodland Village to locate residents of the Catholic faith in a specific hall so Ms. Nobach would not be required to perform an activity that she objected to on religious grounds.

Aff. of James Williams, [36-2], ¶¶ 10-11, att. as Ex. "2" to Def.'s Mem. in Support of Mot. for Summ. J. at p. 2.

It is undisputed that Plaintiff was called in on a Saturday to work in the Main Hall, which was not the building in which she regularly worked when this incident occurred. Her job was usually performed at the 500 Hall. The Court finds that based upon the present record, and the evidence proffered, whether Woodland Village could make a reasonable accommodation without experiencing an undue hardship presents a question of fact. Because material questions of fact remain on Plaintiff's religious discrimination claims for resolution by the trier of fact, summary judgment must be denied.

### III. CONCLUSION

For the foregoing reasons, the Court finds sufficient evidence has been proffered to establish genuine issues of material fact as to Plaintiff's claims. Woodland Village is not entitled to judgment as a matter of law.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [35] of Defendant Woodland Village Nursing Home Center ["Woodland Village"] for Summary Judgment, filed April 16, 2012, pursuant to FED. R. CIV. P. 56 is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, based upon the parties' assertions in their respective briefs, Plaintiff's gross negligence/reckless disregard and/or general negligent supervision/retention claims contained in Count II of the Complaint are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 4th day of September, 2012.

> *s/ Halil Suleyman Ozerden*
> HALIL SULEYMAN OZERDEN
> UNITED STATES DISTRICT JUDGE